## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HEMPEL COATINGS (USA), INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.:** _____ |
| | : | |
| **PRIME PLATE ENTERPRISES, INC.** | : | |
| | : | |
| **Defendant.** | : | |

### PLAINTIFF'S COMPLAINT

Plaintiff, Hempel (USA), Inc. ("Hempel"), by and through its undersigned attorneys, files the following Complaint against Defendant, Prime Plate Enterprises, Inc. ("Prime Plate"), and avers as follows in support thereof:

### PARTIES

1.    Hempel is a Texas corporation with its principal place of business in Conroe, Texas.

2.    Prime Plate is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  Prime Plate is not registered to do business in Texas, does not maintain a place of business in Texas, and has no designated agent for service of process in Texas.  Prime Plate engages in business in Texas and this action arises out of business transacted in Texas to which it was a party.  Prime Plate may be served with process pursuant to Pennsylvania Rule of Civil Procedure 424 and Federal Rule of Civil Procedure 4(h) by hand delivery of the Complaint and citation to Edward G. Gleason, President of Prime Plate.  Edward G. Gleason may be served at Prime Plate's business address, Prime Plate Enterprises, Inc., Philadelphia Naval Business Center, Quarters L-1121 Admiral Way, Philadelphia, PA 19112.

## JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Prime Plate resides within this district.

## FACTS

5.      Hempel and Prime Plate entered a contract titled "Preferred Provider Agreement, Strategic Alliance Option & Strategic Alliance Agreement," dated June 30, 2000, pursuant to which Prime Plate would order specialized paint products from Hempel during the next several years, and Hempel would sell the products to Prime Plate on preferential pricing terms of $18.00 per gallon ("Purchase Agreement," attached as Exhibit A).  Ex.  A, ¶ 1.1(A), (B).

6.      The Purchase Agreement provides, "Payment terms shall be net thirty days."  Ex.  A, ¶ 1.1(D).

7.      The Purchase Agreement provided for Prime Plate to support sales and marketing of Hempel's coatings and Hempel to support the sales and marketing of Prime Plate's coated steel plate.  Ex. A., ¶¶ 1.2-1.5.

8.      The centerpiece of the Purchase Agreement is in the provisions to achieve the parties' goals to sell coatings and coated steel for use in federal military ship building applications.  Toward that end, the

Purchase Agreement provided for Hempel to make a $250,000.00 payment to Prime Plate upon the execution of the agreement, which Prime Plate would use to purchase equipment it needed to apply certain Hempel coatings to steel.  Ex.  A, ¶ 1.7 and Attachment I–Use of Proceeds.

9.      The Purchase Agreement further provides that:

> If upon the first anniversary date of the Preferred Provider Agreement, Hempel has not received needed approvals from appropriate governmental agencies for its shop primer products' use in military ship building applications, Hempel shall have the right to terminate this agreement and receive a full refund of the $250,000.00 payment made upon execution of this agreement (Section 1.7).

Ex.  A, ¶ 1.8.

10.      As of June 30, 2001, the first anniversary date of the Purchase Agreement, Hempel had not received the needed governmental approvals.  Neither Prime Plate nor Hempel has obtained the government approvals to date.

11.      In the summer of 2001, Prime Plate requested a bridge loan of $100,000.00 from Hempel and Hempel advanced the requested $100,000.00.  The loan agreement was memorialized in a loan memorandum dated August, 22, 2001, and signed by Prime Plate's CEO Edward G. Gleason, on August 23, 2001.  ("Loan Agreement", attached as Exhibit B).  The transfer was effected on or about August 24, 2001.  See Ex. G, Bank Transfer Notice.

12.      The Loan Agreement provided for "[r]epayment in full in 60 days from date of transfer." Ex.  B.

13.      By late 2002, Prime Plate had fallen seriously–more than $125,000.00–behind in paying for product it had ordered and received, and had made no payment on the $100,000.00 loan.

14. On November 12, 2002, representatives of Prime Plate, including its CEO, Edward G. Gleason, met with representatives of Hempel, including its president, Pierre Y. Jullien, to negotiate a workout of Prime Plate's indebtedness.

15. At the November 12, 2002, meeting, the parties reached an agreement that:

    a. Hempel would eliminate an invoice for $20,700.00;

    b. the remaining outstanding overdue balance of $106,737.00 would be paid by Prime Plate within a maximum of 18 months in monthly installments to begin December 15, 2002, with a payment of $5,810;

    c. if during 2003 Prime Plate had difficulty with one monthly payment it could be postponed by one month maximum with Hempel's written consent;

    d. Prime Plate would repay the loan in one payment of $100,000.00 on December 31, 2002, and no later than January 30, 2003.

16. Hempel memorialized these terms in minutes ("Workout Agreement", attached as Exhibit C).

17. In a letter dated December 16, 2002, Prime Plate requested the December 15, 2002, payment be postponed until January, 15, 2003, and the December 31, 2002, loan payoff be postponed an additional month, until February 28, 2003. ("December 16, 2002 Prime Plate Letter Request", attached as Exhibit D).

18. By January 13, 2001, Hempel had received no payment and sent a demand letter. ("Hempel Demand Letter", attached as Exhibit E).

19. Hempel has received no payment on the loan, no payment on the open account for paint products, and no refund of its initial $250,000 payment as of the date of this filing.

20. Prime Plate owes Hempel $100,000.00 on the loan pursuant to the Loan Agreement.

21.     Prime Plate ordered paint products from Hempel, and Hempel delivered these products to Prime Plate. Prime Plate owes Hempel $106,737.00 on its open account for these products. The invoices underlying Prime Plate's open account are attached as Exhibit F.

22.     Prime Plate owes Hempel $250,000.00 pursuant to the Purchase Agreement–a full refund of the $250,000.00 payment made upon execution of the Purchase Agreement.

COUNT I<br/>Common Law Sworn Account

23.     Hempel incorporates by reference paragraphs 1 through 22 as if fully set forth herein.

24.     The paint product series of transactions between Hempel and Prime Plate are transactions in which there were sales on one side and purchases on the other, whereby title to personal property passed from one to the other, and the relation of debtor and creditor was thereby created by the general course of dealing.

25.     The charges on the account were made by Hempel in accordance with an agreement with Prime Plate and are the usual, customary, and reasonable prices for these products.

26.     Prime Plate owes $106,737.00 on its account with Hempel. *See* account invoices attached as Exhibit F.

27.     Prime Plate has not paid the $106,737.00 it owes Hempel.

28.     Because of Prime Plate's failure to pay, Hempel has suffered damages of at least $106,737.00.

29.     Hempel is entitled to recover its attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

WHEREFORE, Hempel requests that this Honorable Court award the following:

      a.      Damages in excess of $106,737.00;

      b.      Pre- and post-judgment interest at the highest rate allowed by law;

      c.      Attorneys' fees;

      d.      Costs of court; and

      e.      Any other relief to which it may be entitled.

**COUNT II**
**Breach of Contract/Specific Performance: Purchase Agreement**

30.      Hempel incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

31.      The Purchase Agreement between Prime Plate and Hempel is a valid Contract, pursuant to which Prime Plate agreed to pay Hempel $18.00 per gallon for paint products ordered and received by it.

32.      Prime Plate has breached the Purchase Agreement by failing to pay $106,737.00 for paint products it has ordered and received.

33.      Prime Plate has breached the Purchase Agreement by failing to obtain needed governmental approvals and, upon failure to do so, failing to refund Hempel's $250,000.00 payment made upon execution of the Purchase Agreement.  Alternatively, Hempel is entitled to specific performance of Prime Plate's obligation under the Purchase Agreement to refund the $250,000.00.

34.      Because of Prime Plate's breaches of the Purchase Agreement, Hempel has suffered damages of at least $356,737.00.

35.    Hempel is entitled to recover its attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

WHEREFORE, Hempel requests that this Honorable Court award the following:

a.    Damages in excess of $356,737.00;

b.    Pre- and post-judgment interest at the highest rate allowed by law;

c.    Attorneys' fees;

d.    Costs of court; and

e.    Any other relief to which it may be entitled.

## COUNT III
### Breach of Contract: Loan Agreement

35.    Hempel incorporates by reference paragraphs 1 through 34 as if fully set forth herein.

36.    The Loan Agreement between Hempel and Prime Plate is a valid contract between the parties.

37.    Prime Plate has breached the Loan Agreement by failing to repay to Hempel any part of the $100,000.00 loaned to it by Hempel.

38.    Because of Prime Plate's breach of the Loan Agreement, Hempel has suffered damages of at least $100,000.00.

39.    Hempel is entitled to recover its attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

WHEREFORE, Hempel requests that this Honorable Court award the following:

a.    Damages in excess of $100,000.00;

-7-

b.      Pre- and post-judgment interest at the highest rate allowed by law;

c.       Attorneys' fees;

d.      Costs of court; and

e.      Any other relief to which it may be entitled.

## COUNT IV
## Breach of Contract: Workout Agreement

40.     Hempel incorporates by reference paragraphs 1 through 39 as if fully set forth herein.

41.     The Workout Agreement is a valid contract between the parties.

42.     Prime Plate has breached the Workout Agreement by failing to repay to Hempel any part of the $100,000.00 loaned to it by Hempel and by failing to pay to Hempel any part of the $106,737.00 owed on account.

43.     Because of Prime Plate's breach of the Workout Agreement, Hempel has suffered damages of at least $206,737.00.

WHEREFORE, Hempel requests that this Honorable Court award the following:

a.      Damages in excess of $206,737.00;

b.      Pre- and post-judgment interest at the highest rate allowed by law;

c.      Attorneys' fees;

d.      Costs of court; and

e.      Any other relief to which it may be entitled.

KLETT ROONEY LIEBER & SCHORLING

By_____

     Joseph D. Mancano, Esquire

     Joseph B. Silverstein, Esquire

     Two Logan Square, 12th Floor

     Philadelphia, PA  19103-2756

     (215) 567-7500

     (215) 567-2737 (Fax)

     Attorneys for Plaintiff,

     Hempel (USA), Inc.

<u>Of Counsel:</u>

Cynthia R. Levin Moulton

State Bar No. 12253450

Moulton & Meyer, L.L.P.

600 Travis Street, Suite 6700

Houston, TX  77002

Telephone: (713) 571-9191

Telecopier: (713) 571-9652

Dated: November 3, 2003

-9-